IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


UNITED STATES OF AMERICA,

        Plaintiff,


   vs.                              Civil Action 2:12-cv-951
                                         Judge Watson
                                         Magistrate Judge King

MOHAMED IDRIS AHMED,

        Defendant.


<u>REPORT AND RECOMMENDATION</u>

     This matter is before the Court on *Defendant's Motion to Compel Production of Documents and for Sanctions*, Doc. No. 20 ("*Defendant's Motion*").[1]

**I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

     Defendant Mohamed Iris Ahmed is a native and citizen of Somalia who entered the United States on June 21, 1997, on an F41 immigrant visa (as the brother of a United States citizen). *Complaint*, Doc. No. 1, ¶ 5. In filing an Application for Immigrant Visa and Alien Registration, INS Form 230, with the former Immigration and Naturalization Service ("INS"),[2] defendant answered questions regarding, *inter alia*, his marital status and signed the application under penalty of perjury. *Id*. at ¶¶ 6-7. Thereafter, the USCIS

---

[1] Because this Court concludes that *Defendant's Motion* can be resolved on the parties' filings, the Government's request for oral argument, *Government's Response to Defendant's Motion to Compel*, Doc. No. 27, p. 1 ("*Government's Response*") is denied.

[2] The former INS is now the United States Citizenship and Immigration Services. *See*, *e.g.*, *Government's Response*, p. 13. For ease of reference, the Court will refer to "USCIS" or "former INS."

approved defendant's application and he was admitted into the United States as a lawful permanent resident on June 21, 1997.  *Id*. at ¶ 8.

Defendant filed an Application for Naturalization, Form N-400, on May 31, 2002.  *Id*. at ¶ 9.  In completing this form, plaintiff answered questions regarding, *inter alia*, whether he used another name, his employment history, time spent outside the United States, and his marital history.  *Id*.  Defendant signed this Form N-400 under penalty of perjury.  *Id*. at ¶ 10.

Yvonne Jarrett, a district adjudication officer with the former INS, interviewed defendant under oath regarding his Form N-400 on February 27, 2003 ("the interview").  *Id*. at ¶ 11; *Deposition of Yvonne Edipok Jarrett*, Doc. No. 22-11, pp. 6-10, 23 (filed under seal) ("*Jarrett Deposition*").  The Government alleges that, during the interview, defendant testified, *inter alia*, regarding travel outside the United States and testified that he had been married only once.  *Complaint*, ¶ 11.  At the end of the interview, defendant again signed his Form N-400 under penalty of perjury.  *Id.* at ¶ 12.  Defendant's Application for Naturalization was approved on March 3, 2003.

On October 16, 2012, the United States filed an action pursuant to 8 U.S.C. § 1451(a) to revoke the admission of defendant to citizenship and to cancel defendant's Certificate of Naturalization.  *Complaint*.  The Government alleges a lack of good moral character, concealment of material facts and false statements during the naturalization process.  *Id*. at ¶¶ 20-45.  More specifically, the Government alleges that defendant traveled outside the United States at least thirteen times from June 21, 1997 to February 27, 2003,

rendering false defendant's representations that he had not spent any days outside the United States since May 31, 1997, had not taken any trips of 24 hours or more outside the United States since May 31, 1997, and had not traveled outside the United States since becoming a lawful permanent resident on June 21, 1997.  *Id*.  The Government also alleges that defendant falsely represented that he had been married only once when, in fact, he had been married at least twice.  *Id*. at ¶ 16.

On April 17, 2013, this Court conducted a preliminary pretrial conference pursuant to Fed. R. Civ. P. 16.  *Preliminary Pretrial Order*, Doc. No. 17.  Following that conference, the Court ordered, *inter alia*, that all discovery be completed by February 15, 2014.  *Id*. at 3.  The Court advised the parties that "the discovery completion date requires that discovery requests be made sufficiently in advance to permit timely response by that date.  Discovery-related motions must be filed prior to the discovery completion date."  *Id*.

The parties thereafter embarked on discovery.  *Affidavit of D. Wesley Newhouse*, ¶¶ 2-3, attached as *Exhibit L* to *Defendant's Motion* ("*Newhouse Affidavit*").  On July 25, 2013, the Government served its responses to defendant's discovery requests.  *See* Doc. No. 22-2 (filed under seal).  In response to Request for Production No. 1, the Government represented that it had previously produced defendant's entire file (the "Alien file" or the "A file") and that it had no additional responsive documents.  *Id*. at 3.  Following the Government's response to defendant's discovery requests, a dispute arose that the parties were unable to resolve extrajudicially.

3

*Newhouse Affidavit*, ¶ 7.  Defendant therefore filed his motion, seeking an order requiring the Government to produce certain documents or to impose sanctions in the form of dismissal of the action and for an award of attorney fees and costs associated with the filing of *Defendant's Motion*.  The Government opposes *Defendant's Motion*.  *See Government's Response*.  With the filing of *Defendant's Corrected Reply in Support of Motion to Compel Production of Documents and for Sanctions*, Doc. No. 33 ("*Reply*"), this matter is ripe for resolution.

## II.  *DEFENDANT'S MOTION* IS UNTIMELY

The Court specifically advised the parties that discovery-related motions must be filed before the discovery completion date of February 15, 2014.  *Preliminary Pretrial Order*, p. 3.  *Defendant's Motion* was filed one month after this deadline.  Rule 16(b) of the Federal Rules of Civil Procedure provides that a "schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "'The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements.'"  *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)).  "A district court should also consider possible prejudice to the party opposing the modification."  *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005) (citing *Inge*, 281 F.3d at 625).  The focus is, however, "primarily upon the diligence of the movant; the absence of prejudice to the opposing party is not equivalent to a showing of good cause."  *Ortiz v. Karnes*, 2:06-cv-562, 2010 U.S. Dist. LEXIS 75287, 2010 WL 2991501, at *1 (S.D. Ohio July

26, 2010) (citing *Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995)).  Whether to grant leave under Rule 16(b) falls within the district court's discretion.  *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003).

Here, defendant has not only failed to explain why he was unable to meet the deadline previously established by the Court, he has not even acknowledged that he missed the deadline for filing discovery-related motions.  *See Defendant's Motion; Reply.*  Stated differently, defendant offers no explanation as to why the 10-month discovery period was insufficient for filing *Defendant's Motion*.  In short, defendant has failed to establish the necessary good cause for extending the deadline for filing discovery-related motions.

Nevertheless, the Court will, in the exercise of its discretion, permit the belated filing of *Defendant's Motion*.  As noted *supra*, *Defendant's Motion* is now fully briefed and the Government has not complained that it has been prejudiced by defendant's untimely filing. Accordingly, under the circumstances of this particular case, the Court will proceed to consider the merits of *Defendant's Motion*.

## III.  SANCTIONS REQUESTED IN *DEFENDANT'S MOTION*

Defendant moves under Rule 37 for an order compelling the production of documents and for sanctions, arguing that: (1) the Government failed to take reasonable steps to confirm that the A file was complete and/or to follow-up on missing documents, *Defendant's Motion*, pp. 6-8; (2) the Government failed to produce several documents contained in the A file because the Government either lost or destroyed such documents, *Defendant's Motion*, pp. 3-6, 8-9; *Reply*,

pp. 5-20; (3) the Government failed to produce a transmittal sheet and an envelope from a translation service that defense counsel later discovered in the original A file, *Defendant's Motion*, pp. 8-9; *Reply*, pp. 15-16; and (4) the Government produced printouts that it represented to be part of the original A file that were not in fact part of that file, *Defendant's Motion*, p. 9.  It is not clear, however, under what authority defendant seeks the imposition of sanctions.  For example, defendant complains that the Government's pre-suit investigation was defective and that the Government persisted in pursuing this litigation "[w]hen confronted with its misconduct[,]" thus warranting sanctions.  *See, e.g., Defendant's Motion*, pp. 2, 6-8, 10; *Reply*, pp. 3, 13, 20.  Although defendant does not refer expressly to Fed. R. Civ. P. 11(b), the Government assumes that defendant seeks sanctions under that rule.  *Government's Response*, p. 13 n.6.  In light of defendant's allegations as well as his request for dismissal of this action and an award "of his attorney fees and costs in appearing in and defending this action[,]" *Defendant's Motion*, p. 14, this Court agrees that defendant apparently seeks sanctions under Rule 11 based on a purportedly defective pre-suit investigation.

Defendant also seeks sanctions under Rule 37, *Defendant's Motion*, pp. 1, 10-11, clarifying in his *Reply* that the Government's alleged discovery failures warrant the sanction of dismissal under Rule 37(c)(1)(C) (sanctions for failure to disclose or supplement an earlier discovery response may include, *inter alia*, sanctions under Fed. R. Civ. P. 37(b)(2)(A), including dismissal of the action under Rule 37(b)(2)(A)(v)).  *See Reply*, p. 5 (rejecting the Government's

6

interpretation that defendant moved for sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A) (addressing failure to obey an order)).

Finally, defendant also apparently seeks dismissal of this action under the Court's inherent authority to sanction the Government's alleged spoliation of evidence. *Defendant's Motion*, pp. 2, 13-14; *Reply*, pp. 16-20.

In light of the ambiguity presented in defendant's filings, the Court will, in an abundance of caution, address each of these purported bases for sanctions.

## IV.   RULE 11 SANCTIONS REQUESTED BASED ON PRE-SUIT INVESTIGATION

Defendant argues that the Government's agent failed to conduct a thorough investigation before instituting this litigation and that, during its pre-suit investigation, the Government "disregarded other means by which Defendant made disclosure of the information." *Defendant's Motion*, pp. 2, 6-8; *Reply*, pp. 3, 13. More specifically, defendant represents that Homeland Security Investigations Special Agent Justin Myers requested defendant's A file in to order to investigate an alleged misrepresentation regarding travel. *Defendant's Motion*, p. 6 (citing *Deposition of Justin B. Myers*, Doc. No. 22-9, pp. 25-26 (under seal) ("*Myers Deposition*")). According to defendant, Special Agent Myers had never before investigated the naturalization process and assumed that defendant's A file was complete. *Id.* at 6-7 (citing *Myers Deposition*, pp. 12, 25-26, 36)). Accordingly, Special Agent Myers did not interview Officer Jarrett to determine what documents defendant provided to her at defendant's interview by her nor did he interview any of the other individuals who

7

had accessed defendant's A file.  *Id*. at 7 (citing *Myers Deposition*, pp. 43, 78-80).  Defendant also complains that the Federal Bureau of Investigation ("FBI") apparently had custody of the A file "at some point[,]" but that "there are no chain of custody records or other documents that identify who these individuals are, or what they may have done in the course of handling the file" and the Government refuses to provide this information based on its claim of privilege. *Id*. (citing *Myers Deposition*, p. 89; *Exhibit H*, Doc. No. 22-4 (the Government's responses to defendant's second set of discovery requests) (filed under seal)).  Accordingly, defendant argues, the Government "[f]ailed to investigate and affirm, before suing Defendant, that the documents upon which it relied were accurate and complete" and that it "[r]efused to dismiss the present action after it's [sic] mishandling of the evidence became manifestly evident." *Id*. at 10.

The Government denies that it failed to conduct an adequate pre-suit investigation in violation of Rule 11(b) and "avers it conducted a sufficient investigation prior to filing this case."  *Government's Response*, p. 13 n.6.  *See also Declaration of Justin Myers*, Doc. No. 27-1 ("*Myers Declaration*").

In reply, defendant insists that the Government "disregarded other documents which Defendant had submitted to the Government that disclosed information related to his foreign travel and marital status, copies of which are not present in Defendant's alien file." *Reply*, p. 3.  Defendant further argues that, "[k]nowing that it recklessly mishandled [the Form G-325], the government has

8

nevertheless persisted in its efforts to strip Defendant of his citizenship." *Id*. at 13. *See also id*. at 20. Defendant seeks dismissal of this action and an award of "his attorney fees and costs in appearing in and defending this action." *Defendant's Motion*, p. 14; *Reply*, p. 1.

Under Rule 11 of the Federal Rules of Civil Procedure, a court may impose sanctions if

> a reasonable inquiry discloses the pleading, motion, or
> paper is (1) not well grounded in fact, (2) not warranted
> by existing law or a good faith argument for the extension,
> modification or reversal of existing law, or (3) interposed
> for any improper purpose such as harassment or delay.

*Merritt v. Int'l Ass'n of Machinists & Aero. Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (quoting *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir. 1988)) (internal quotation marks omitted). "Rule 11 therefore imposes a 'continual obligation on attorneys to refrain from pursuing meritless or frivolous claims at any stage of the proceedings[.]'" *Id*. at 627 (quoting *Herron*, 858 F.2d at 336).

However, a motion for sanctions under Rule 11 may not be filed "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Rule 11(c)(2). Accordingly,

> [t]hese provisions are intended to provide a type of "safe
> harbor" against motions under Rule 11 in that a party will
> not be subject to sanctions on the basis of another party's
> motion unless, after receiving the motion, it refuses to
> withdraw that position or to acknowledge candidly that it
> does not currently have evidence to support a specified
> allegation. . . . The timely withdrawal of a contention
> will protect a party against a motion for sanctions.

*Ridder v. City of Springfield*, 109 F.3d 288, 294 (6th Cir. 1997) (quoting Fed. R. Civ. P. 11 Advisory Committee Notes (1993

Amendments)).  The United States Court of Appeals for the Sixth
Circuit requires "strict adherence" with the safe harbor provision of
the rule.  *Uszak v. Yellow Transp., Inc.*, No. 08-4026, 343 Fed. Appx.
102, at *108 (6th Cir. Aug. 21, 2009) (quoting *Ridder*, 109 F.3d at
297).

Here, defendant argues that "[d]espite Defendant's request that
Plaintiff discontinue its efforts to strip him of his citizenship
because of its spoliation of evidence, Plaintiff has persisted in
pursuit of this action."  *Defendant's Motion*, p. 2.  *See also Reply*,
p. 20 ("When confronted with its misconduct, Plaintiff insisted on its
continued pursuit of the present action[.]").  However, defendant
neither argues that he complied with the Rule 11 safe harbor
requirement nor does he point to any evidence confirming such
compliance.  Moreover, the record does not establish that "Defendant's
request," *Defendant's Motion*, p. 2, or that the "confront[ation] with"
the Government's alleged misconduct, *Reply*, p. 20, was a "safe harbor"
letter or motion served on the Government in compliance with the rule.
*See*, *e.g.*, *Newhouse Affidavit* (describing alleged deficiencies in the
Government's responses to discovery requests and extrajudicial efforts
to resolve discovery disputes).  Because defendant did not comply with
the safe harbor provision of Rule 11(c)(2), sanctions under this rule
are unavailable.  *See*, *e.g.*, *Ridder*, 109 F.3d at 297.  Accordingly, to
the extent that he seeks sanctions under Rule 11, it is **RECOMMENDED**
that *Defendant's Motion* be **DENIED**.

**V.    SANCTIONS REQUESTED IN CONNECTION WITH THE FAILURE TO PRODUCE
CERTAIN DOCUMENTS**

Defendant complains that the Government has not produced four

categories of documents that should have been contained in defendant's A file:

(1)   copy of defendant's passport;

(2)   defendant's reentry permit;

(3)   the former INS written notice of interview; and

(4)   defendant's completed G 325A form (providing biographical information).

*Defendant's Motion*, p. 3-6, 8-10; *Reply*, pp. 5-16.  Defendant contends that sanctions are warranted because the Government lost or destroyed these documents.  The Court shall address each document in turn.

**A.   Copy of defendant's passport**

Defendant argues that the A file should have contained a copy of his passport.  *Defendant's Motion*, pp. 3-4.  According to defendant, he had a Somali passport during the relevant time period that reflected several trips to the Middle East and Africa.  Doc. Nos. 20-1, 20-2, 20-3 (copies of defendant's passports); *Affidavit of Mohamed Idris Ahmed*, Doc. No. 22, ¶ 3 ("*First Ahmed Affidavit*") (authenticating copies of his passports from the period May 1998 to March 2003); *Deposition of Mohamed Idris Ahmed*, Doc. No. 22-10, pp. 47-48, 53-54 (filed under seal) ("*Ahmed Deposition*").  Defendant explains that he traveled to these countries because he is a native of Somalia and because his wife and children lived in Saudi Arabia. *First Ahmed Affidavit*, ¶¶ 1, 3.  Defendant testified that he brought his Somali passport, No. 0966259, to the interview and gave it to Officer Jarrett for her review.  *Id.* at ¶ 3; *Ahmed Deposition*, pp. 50-51.  Although he did not see Officer Jarrett photocopy his passport during the interview, he asserts that she took his passport out of the

room.  *Ahmed Deposition*, pp. 50-52; *First Ahmed Affidavit*, ¶ 3.
Defendant contends that Officer Jarrett's testimony supports his
assertion that a copy of his passport should have been in the A file.
*Defendant's Motion*, pp. 3-4 (citing *Jarrett Deposition*, pp. 41, 59-60,
63) (agreeing, *inter alia*, that travel to Middle Eastern and certain
African countries would have been pertinent to defendant's
naturalization process and agreeing that it is standard practice for
an applicant to present his or her passport at the interview, that she
would then review the passport and copy the passport if it reflects
any relevant travel outside the United States, and that she would then
place the copy in the A file).  Moreover, defendant notes that Terence
Lee, an experienced immigration officer who served as the reverifier
on defendant's file, also acknowledged that travel to Middle Eastern
and certain African countries would have been relevant to defendant's
naturalization process.  *Id*. at 3 (citing *Deposition of Terence
William Lee*, Doc. No. 22-12, p. 13 (filed under seal) ("*Lee
Deposition*")).  Defendant therefore contends that the Government must
have lost the copy of his passport that should have been in the file.
*Defendant's Motion*, p. 4.

The Government disputes defendant's contention that he brought a
passport reflecting international travel to the interview, arguing
that defendant "either provided a clean passport — reflecting no
foreign travel - or no passport at all" during his interview.
*Government's Response*, pp. 10-11.  In support, the Government also
cites the testimony of Officer Jarrett who explained that she reviewed
defendant's Form N-400 with him and would have cross-referenced his

answers about travel on that form with his passport, noting any
discrepancies in red ink. *Jarrett Deposition*, pp. 24, 27-28. *See
also Government's Response*, p. 11 (citing *Lee Deposition*, pp. 23, 28,
83) (explaining that an officer would have made notations on the form
had there been a discrepancy between defendant's statements about
travel on the Form N-400 and evidence of travel in the passport
presented at the interview). Officer Jarrett also testified that she
would not have copied defendant's passport had he presented one that
reflected no travel. *Id*. at 128. The Government therefore takes the
position that defendant failed to provide a copy of Somali passport
No. 0966259 because there are no annotations in red ink on defendant's
Form N-400 and no copy of that passport in his A file. *Government's
Response*, p. 11. The Government also cites to the testimony of Bich
Khue Truong who worked for Win Translation Services from 1985 through
2012, helping individuals fill out immigration applications, including
the Form N-400. *Deposition of Bich Khue Truong*, Doc. No. 27-1, pp. 8-
10 ("*Truong Deposition*"). Ms. Truong testified that it was she who
prepared defendant's Form N-400. *Id*. at 11-12. She noted no travel
on defendant's Form N-400 because defendant told her that he had not
spent any time outside the United States during the previous five
years. *Id*. at 22-23. Ms. Truong further testified that, had
defendant disclosed his thirteen trips outside the United States
during the statutory period, she would have listed those trips in Part
7 of defendant's Form N-400. *Id*. at 24-25. The Government therefore
argues that defendant's concealment of this travel establishes
defendant's fraudulent intent, making it more likely that defendant

did not bring Somali passport No. 0966259 to the interview.
*Government's Response*, p. 12. The Government goes on to argue that,
to the extent that he may produce evidence to the contrary, defendant
is trying to improperly litigate the merits of the case in the context
of a motion to compel. *Id*. at 12-13. In any event, the Government
argues, defendant has not shown that it has willfully, in bad faith or
contumaciously refused to produce a copy of Somali passport No.
0966259. *Id*. at 13. The Government insists that it cannot produce
that passport because it is not in defendant's A file and no one has
removed any documents from that file, either intentionally or
accidentally. *Id*. (citing, *inter alia*, *Myers Declaration*, ¶¶ 5-16
(providing the custody history of defendant's A file and averring,
*inter alia*, that he received that file on October 19, 2011, has had
continuous custody of the file since that date, and has not removed or
destroyed any documents from that file).

In reply, defendant contends that the Government's position that
he presented a "clean" passport or no passport at all is based on rank
speculation. *Reply*, pp. 6-8. First, defendant avers that all of his
passports, including Somali passport No. 0966259 (which was the only
valid passport at the time of the interview), reflect foreign travel
by defendant and were produced to the Government during discovery.
*Id*. at 6 (citing *Ahmed Deposition*, pp. 46-52). Second, defendant
notes that the Government has not and cannot point to a "clean"
passport. *Id*. Third, defendant notes Officer Jarrett's testimony
that applicants for naturalization are required to present a passport
at the naturalization interview, undermining the Government's argument

14

that defendant presented no passport.  *Id.* (citing *Jarrett Deposition*, pp. 16, 41, 123).  Fourth, defendant notes that Officer Jarrett had no recollection of the specific passport that defendant presented or what it reflected, which does nothing to support the Government's contention that defendant presented a "clean" passport.  *Id.* (citing *Jarrett Deposition*, p. 43).  Fifth, Officer Jarrett's failure to make annotations on the form cannot serve as evidence that defendant did not present his Somali passport no. 0966259.  *Id.* at 7-8 (citing *Jarrett Deposition*, pp. 52-55).  Sixth, according to Officer Lee, Officer Jarrett's practice of recording only the discrepancies regarding foreign travel that she believed were significant violated USCIS regulations.  *Id.* at 8 (citing *Lee Deposition*, pp. 19-20).  Instead, Officer Jarrett should have noted any travel reflected on the passport that was not on the N-400 Form.  *Id.* (citing *Lee Deposition*, pp. 17, 20, 31-32, 98).  Seventh, Ms. Truong testified that she does not remember meeting with defendant or assisting him in completing the Form N-400; her testimony was limited to what she ordinarily does when she conducts interviews.  *Id.* (citing *Truong Deposition*, p. 34).  For these reasons, defendant argues that the absence of the passport from defendant's A file does not excuse the Government's fault in the loss or destruction of the document.  *Id.* at 9-10.  Defendant further contends that the Government's failure to fulfill its discovery obligations in this regard and the resulting prejudice to defendant justify dismissal of this action.  *Id.* at 10.

### 1.    Rule 37(c)(1)(C)

Defendant appears to seek sanctions under Rule 37(c)(1)(C) in

15

connection with the Government's failure to produce a copy of his
passport during discovery. Rule 34 of the Federal Rules of Civil
Procedure requires a party to whom a request to produce is directed to
respond within 30 days after being served with the request.  Fed. R.
Civ. P. 34(b)(2)(A).  The responding party "must supplement or correct
its" response "in a timely manner if the party learns that in some
material respect the disclosure or response is incomplete or
incorrect, and if the additional or corrective information has not
otherwise been made known to the other parties during the discovery
process or in writing[.]" Fed. R. Civ. P. 26(e)(1)(A).  A party who
fails to comply with Rule 26(e) may not use such information "on a
motion, at a hearing, or at a trial, unless the failure was
substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).
In addition to or instead of this preclusion sanction, "the court, on
motion and after giving an opportunity to be heard . . . may impose
other appropriate sanctions, including any of the orders listed in
Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(c)(1)(C).  However,
"the party seeking to invoke the preclusion sanction [Rule 37(c)(1)]
must first prove that the opposing party violated . . . Rule 26(e) by
failing to disclose the evidence in question earlier in the
proceedings."  7-37 James Wm. Moore *et al.*, Moore's Federal Practice §
37.60[2][a] (3d ed. 2012).

      Rule 37(b)(2)(A) provides that sanctions may include the
following:

      (i)  directing that the matters embraced in the order or
      other designated facts be taken as established for purposes
      of the action, as the prevailing party claims;

16

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party[.]

Fed. R. Civ. P. 36(b)(2)(A)(i)-(vi).

Here, defendant seeks dismissal of this case because of the Government's alleged discovery violations.  In determining whether or not to dismiss a case under such circumstances, courts consider four factors:

(1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Harmon v. CSX Transp.*, 110 F.3d 364, 366-67 (6th Cir. 1997) (quoting *Reg'l Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 153-55 (6th Cir. 1988)) (internal quotation marks omitted).

After reviewing the record and the positions of the parties, the Court finds that, as it relates to a copy of his passport, defendant has not established that the Government failed to supplement or correct its discovery response in violation of Rule 26(e). The Court therefore concludes that defendant is not entitled to an award of sanctions under Rule 37(c)(1)(C).

As detailed *supra*, the Government has presented evidence that

defendant never presented passport No. 0966259 during his interview on February 27, 2003. It goes without saying that a party cannot be expected to produce a document that it never possessed. Although defendant offers arguments and evidence to the contrary, the Court declines to render what would effectively be a ruling on the merits of the case by resolving this factual dispute. Accordingly, as it relates to sanctions under Rule 37(c)(1)(C) for failure to produce a copy of plaintiff's passport, *Defendant's Motion* is not well-taken.

### 2. Inherent authority

In addition to seeking sanctions under Rules 11 and 37, defendant also asks that the case be dismissed because of the Government's alleged spoliation of evidence. "[A] federal court's inherent powers include broad discretion to craft proper sanctions for spoliated evidence." *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009) (*en banc*). *See also Metz v. Unizan Bank*, 655 F.3d 485, 490-91 (6th Cir. 2011) (rejecting the assertion that "inherent power sanctions are improper if Rule 11 also applies"); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991) (stating that inherent powers "can be invoked even if procedural rules exist which sanction the same conduct"). "Spoliation is defined as the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *United States v. Boxley*, 373 F.3d 759, 762 (6th Cir. 2004) (citation omitted). Intentional destruction is not "a knowing and willful removal of evidence, but [] removal with the 'purpose of rendering it inaccessible or useless to [a party] in preparing its case; that is, spoiling it.'" *Id.* (quoting *Nationwide Mut. Fire Ins. Co. v. Ford*

*Motor Co.*, 174 F.3d 801, 804 (6th Cir. 1999)).  "To warrant a spoliation sanction, the party seeking the sanction must show that the evidence was destroyed with a culpable state of mind." *Adkins v. Wolever*, 692 F.3d at 504. A party may satisfy this requirement "by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently." *Id.* at 504-05 (citations and internal quotation marks omitted).  In determining an appropriate sanction for spoliated evidence, the United States Court of Appeals for the Sixth Circuit has stated that a court should craft a sanction that serves "both fairness and punitive functions." *Adkins*, 554 F.3d at 652.  The severity of the sanction should correspond to a party's fault "[b]ecause failures to produce relevant evidence fall 'along a continuum of fault – ranging from innocence through the degrees of negligence to intentionality[.]'" *Id.* at 652-53 (internal citations omitted).  Although dismissal of an action falls within a court's inherent authority, such a sanction is "particularly severe[.]" *Chambers*, 501 U.S. at 45. *See also Consolidation Coal Co. v. Gooding*, 703 F.2d 230, 232 (6th Cir. 1983) ("Notwithstanding our 'inherent power,' this court and others have recognized that dismissal with prejudice is a harsh remedy not to be employed indiscriminately.").

In the case presently before the Court, there is evidence that defendant never presented passport No. 0966259 during his interview on February 27, 2003.  Therefore, the record does not unequivocally establish that the Government intentionally, or even negligently, lost or destroyed passport No. 0966259.  Moreover, the Government has

19

offered evidence regarding the chain of custody of the A file, which,

for present purposes only, sufficiently addresses defendant's

criticism of the chain of custody of the A file:

3.    I [Special Agent Myers with the Department of Homeland
Security] am personally familiar with the records keeping
process at the National Records Center (NRC), specifically
regarding alien files.  I also gained further insight into
NRC processes through John Lager, who is the Section Chief
for the NRC's Records Management and Operations Branch.

4.    This Declaration describes, generally, the NRC's
records keeping procedures, specifically for alien files.
The statements contained in this declaration are based on
information provided to me by the NRC, and my review of the
relevant documents kept by the NRC in the course of
ordinary business.

5.    The NRC was founded in 2000.  The NRC utilizes the
United States Citizenship and Immigrations (USCIS) Records
Operation Handbook and the NRC Customer Guide for everyday
records management.

6.    The NRC stores alien files at the request of USCIS.
NRC is responsible for the alien files only while the files
are located at the NRC.  The NRC receives alien files form
USCIS and distributes them back to USCIS upon request.
Alien file requests are made through either the Central
Index System (CIS) or the National File Tracking System
("NFTS").  The NRC updates both systems when receiving or
distributing alien files.  CIS and NFTS are the only two
databases that the NRC uses to track the receipt and
distribution of alien files.

7.    When distributing alien files to USCIS, the NRC
produces a label and places it on the outside of the alien
files to assist with tracking.  The NRC does not place any
tracking documents into alien files.  Nor do they enter any
hand written notes in alien files.

8.    The NRC receives and distributes alien files directly
from and to USCIS.  They do not honor requests made outside
of USCIS.  Agencies outside of DHS [Department of Homeland
Security] must request information from alien files
directly through USCIS, HIS [Homeland Security
Investigations], Immigration and Customs Enforcement (ICE),
or United States Customs and Border Protection (CBP).  The
outside agency must be accompanied by one of the DHS
agencies listed above to review original alien files.

9.    At the request of USCIS, the NRC will add documents to
an alien file while the alien file is located at the NRC.
The NRC does not remove original documents from alien files
to distribute to USCIS.  In the event USCIS requests
original documents from an alien file, the NRC will
distribute the entire alien file to USCIS.

10.    On occasions, DHS agencies such as:  USCIS, HIS, ICE,
and CBP will contact the NRC's call center and request a
scanned copy of a specific document from an alien file.
The NRC will remove the original document from the alien
file, make a copy of the original document, and immediately
place the original document back into the alien file.  The
NRC tracks requests made through the call center through
the Electronic Workload Reporting and Tracking System
(EWRTS).  EWRTS is an NRC internal database.  The system
contains internal notes regarding requests made through the
NRC's call center.

11.    The NRC has no EWRTS entries associated with
Defendant's alien file (046 078 961).  Therefore, the NRC
has never received a request to remove and scan original
documents from Defendant's alien file (046 078 961).  The
NRC has no temporary files or working folders associated
with alien file 046 078 961.

12.    NFTS currently shows the following office custody
history for alien file 046 078 961:

| DATE | TRANSFERRED FROM | RECEIVING OFFICE |
|------|------------------|------------------|
| 04/12/2001 | Southern Service Center (SSC) | National Records Center (NRC) |
| 06/13/2002 | National Records Center (NRC) | Nebraska Service Center (NSC) |
| 03/07/2003 | Nebraska Service Center (NSC) | Atlanta USCIS Office (ATL) |
| 02/01/2005 | Atlanta USCIS Office (ATL) | Cleveland USCIS Office (CLE) |
| 02/15/2005 | HSI Columbus, Ohio | Cleveland USCIS Office (CLE) |
| 04/28/2006 | Cleveland USCIS Office (CLE) | National Records Center (NRC) |
| 07/03/2006 | National Records Center (NRC) | Federal Records Center (FRC) |

21

| 07/07/2006 | Federal Records Center (FRC) | National Records Center (NRC) |
| 01/30/2008 | National Records Center (NRC) | California Service Center (WSC) |
| 09/21/2009 | California Service Center (WSC) | National Records Center (NRC) |
| 02/09/2010 | National Records Center (NRC) | Federal Records Center (FRC) |
| 10/12/2011 | Federal Records Center (FRC) | National Records Center (NRC) |
| 10/19/2011 | National Records Center (NRC) | Columbus USCIS Office (CLM) |
| 10/19/2011 | HIS Columbus, Ohio | N/A |

13.  The following is a list of physical locations associated with the location codes listed above:

| OFFICE | LOCATION |
|--------|----------|
| NRC | Lee's Summit, Missouri (active files) |
| FRC | Lee's Summit, Missouri (retired files) |
| SSC | Irving, Texas |
| NSC | Lincoln, Nebraska |
| ATL | Atlanta, Georgia |
| CLE | Cleveland, Ohio |
| WSC | Laguna Niguel, California |
| CLM | Columbus, Ohio. |

14.  According to the USCIS Records Operation Handbook [PartI-08(D)(4)], unscheduled records cannot legally be destroyed until a disposition has been approved by the National Archives and Records Administration using a Standard Form (SF) 115.  Documents contained in an alien file are considered unscheduled because they do not contain a destroy after date.  Alien file 046 078 961 does not contain an SF-115 authorizing the destruction of any documents, nor is an SF115 noted in any related database.

15.  On October 19, 2011, I received alien file 046 078 961 directly from CLM and have had continuous custody of the alien file since that date.  I have not removed/destroyed any documents from alien file 046 078 961.

16.  The only other individual outside of USCIS/NRC that

```
had custody of Defendant's alien file was another HIS agent
in my office.  Special Agent Greg Dalga received the file
on February 15, 2005.  Special Agent Dalga reviewed
Defendant's alien file at that time, but closed his
investigation associated with Defendant because Defendant
departed the United States.  Special Agent Dalga never
provided Defendant's alien file to any other agencies.
Special Agent Dalga does not remember seeing a copy of a
passport or Form G-325 in Defendant's alien file.
```

*Myers Declaration*, ¶¶ 3-16.

Taking the evidence as a whole, and considering that this arises in the context of a discovery dispute, the Court cannot conclude at this juncture that defendant has established that the Government knowingly, or even negligently, destroyed a copy of passport No. 0966259.  *See*, *e.g.*, *Adkins*, 692 F.3d at 504-05.  Accordingly, to the extent that defendant seeks dismissal pursuant to the Court's inherent authority for the Government's alleged spoliation of passport No. 0966259, *Defendant's Motion* is not well-taken.

   **B.   Defendant's reentry permit**

Defendant next contends that a copy of his reentry permit is missing from the original A file.  *Defendant's Motion*, p. 5. According to the Government, a reentry permit "is a document used by aliens who intend to be outside the United States for one year or more or who intend to take up residence in another country." *Government's Response*, p. 14 (citing *Exhibit 3*, USCIS publication, "How do I get a reentry permit?", attached thereto).  Defendant avers that he obtained a reentry permit because of his "frequent travels abroad[.]"  *First Ahmed Affidavit*, ¶ 3.  Defendant further avers that he brought the reentry permit with him to the interview and gave it to Officer Jarrett who kept it without giving him a copy of the permit.  *Id*.  *See*

*also Affidavit of Mohamed Idris Ahmed*, ¶¶ 4-5, dated October 13, 2014, (averring that he brought his reentry permit to the interview) ("*Second Ahmed Affidavit*"), attached to *Defendant's Memorandum in Respect to Additional Evidence*, ECF 34 ("*Defendant's Sur-Reply*"). Defendant further contends that the presence of the reentry permit in his A file would have been evidence of his good faith disclosure to the Government of his foreign travel. *Reply*, pp. 11-12. Defendant goes on to aver that he found his original reentry permit in a briefcase that he had previously thought lost. *Defendant's Sur-Reply*, ¶¶ 2, 4-5. Defendant contends that the discovery of his original re-entry permit (as well as additional evidence in that briefcase) undermines the Government's position that no such permit had ever existed and further highlights the Government's failure to properly handle key evidence in this case. *Id.* at 1-2.

The Government responds that defendant's recent discovery of the reentry permit "is not proof that Defendant presented any travel documents at his naturalization examination[,]" noting that defendant did not aver that he presented the permit to the naturalization examiner, Officer Jarrett. *Government's Response to Defendant's Notice of Additional Evidence*, ECF 36, pp. 1-2 ("*Government's Response to Sur-Reply*"). Indeed, Officer Jarrett testified that, had defendant brought a reentry permit to the interview, she would have copied it and placed it in his A file. *Jarrett Deposition*, pp. 55-56, 128-130. The Government therefore argues that, because defendant's A file does not contain a copy of his reentry permit, it follows that defendant did not present a copy to Officer Jarrett at the interview.

*Government's Response to Sur-Reply*, p. 2 (citing *Exhibit E*).

As with passport No. 0966259, the Government has presented some evidence that defendant did not present the reentry permit at the interview, which would therefore explain its absence from defendant's A-file. Because this Court declines to resolve, at this stage of the proceedings, the factual dispute surrounding this issue, the Court cannot conclude that the Government violated Rule 26(e) by failing to produce a document that the A file, according to the Government's evidence, never contained. Sanctions pursuant to Rule 37(c)(1)(C) are therefore unwarranted. Finally, for the reasons stated *supra*, the Court cannot conclude at this time that the Government knowingly or negligently destroyed or lost the reentry permit. Accordingly, the Court declines to dismiss this action pursuant to its inherent authority on this basis.

### C.   The written notice of interview

A copy of the written notice of defendant's interview ("Notice of Interview") was not in his A file. *Defendant's Motion*, p. 5. According to defendant, the USCIS always sends a Notice of Interview to a naturalization applicant, advising what items the applicant should bring to the interview. *Id.* (citing *Jarrett Deposition*, p. 66). A copy of the Notice of Interview is also included in an applicant's A file. *Id.* (citing *Jarrett Deposition*, p. 66). Here, defendant avers that he received written notice, instructing him, *inter alia*, to bring certain items to the interview. *First Ahmed Affidavit*, ¶ 3; *Second Ahmed Affidavit*, ¶¶ 3-4. Specifically, the Notice of Interview advised defendant to bring the following documents

25

to the interview:

- This letter.

- Your Alien Registration Card (green card);

- Your passport and/or any other documents you used in connection with any entries into the United States.

- Those items noted below which are applicable to you [documents relating to a spouse].

*Request for Applicant to Appear for Naturalization Initial Interview*, PAGEID#:1038, attached to *Second Ahmed Affidavit*.  Defendant contends that the Notice of Interview corroborates his contention that he took these items to the interview, but that the Government has lost that corroborating evidence.  *Defendant's Motion*, p. 5; *Defendant's Sur-Reply*, p. 1 (averring that he recently found a copy of the written notice in a briefcase that he had previously thought lost).

Prior to defendant's recent discovery of the Notice of Interview, the Government had conceded that any notice sent to defendant would have included a request to bring a copy of defendant's passport to his interview.  *Government's Response*, p. 17 (citing *Exhibit H*, pp. 7-8, ¶ 17, Doc. No. 22-4) (the Government's response to defendant's request to admit No. 17, "The parties may therefore assume that any notice sent to Defendant scheduling his naturalization examination would have requested that defendant bring a copy of his passport to his naturalization examination.").  The Government also concedes that defendant's A file does not contain the Notice of Interview, *Government's Response*, p. 17 (citing *Exhibit E*, Doc. No. 22-1), but now suggests that the document may never have been placed in his A file or may have been "inadvertently misplaced."  *Id.* (citing *Lee*

26

*Deposition*, p. 57) (explaining that appointment letters were not always placed in an A file).  The Government therefore argues that defendant has not shown that the Government "willfully, in bad faith or contumaciously refused to produce" this document.  *Id.*; *Government's Response to Sur-Reply*, p. 4.  The Government also contends that defendant cannot demonstrate any prejudice in light of the Government's prior concession and recent discovery of the Notice of Interview.  *Id.* Defendant, however, contends that his discovery of the Notice of Interview provides corroborating evidence that he brought other documents, *i.e.*, a copy of his passport, to the interview, and supports a finding that the Government has mishandled key evidence.  *Defendant's Sur-Reply*, pp. 1-2.

Again, the Court concludes that sanctions are unwarranted. First, even if the Government's failure to produce a copy of the Notice of Interview constituted a violation of Rule 26(e), that violation was harmless in light of the Government's earlier concession. Moreover, defendant's recent discovery of his Notice of Interview permits him to use this evidence to corroborate his contention that he brought his passport and reentry permit to the interview.

### D.  Defendant's completed Form G-325A

Defendant contends that his A file should have contained a completed Form G-325A, which seeks biographic information, including: all other names used; date, city and country of birth; parents' names and date, city and country of birth; current spouse (singular) and date and place of marriage; former spouses and date and place of

27

marriage and termination of marriage; applicant's residences for the
prior five years; applicant's past addresses outside the United States
of more than one year; employment history for the past five years and
occupation abroad if not captured by this history. *Defendant's
Motion*, pp. 5-6; *Exhibit I*, attached thereto (blank Form G-325A).
Defendant avers that he completed and submitted the Form G-325A, but
did not retain the original or copy of this form. *First Ahmed
Affidavit*, ¶ 4. According to defendant, Officer Jarrett reviewed this
form on the day of the interview "and made notations in Defendant's A
file referring to his G 325A form." *Defendant's Motion*, p. 6 (citing
*Jarrett Deposition*, pp. 91-92, 106; *Myers Deposition*, pp. 65-66;
*Exhibit E* (A file as Government produced it reflecting handwritten
notes regarding Form G-325A); *Exhibit G* (original A file), pp. 5-6,
38).[3] However, the Form G-325A is not in the copy of the A-file
produced to defendant nor is it in the original A file. *Id.* (citing
*Jarrett Deposition*, pp. 90-91). *See also Exhibit H*, p. 5
(Government's responses to request for admissions and request for
production of documents) and *Exhibit J* (correspondence from
Government's counsel dated November 15, 2013)).

        According to the Government, "[a]liens are instructed to submit a

---

[3] If defendant intended to refer the Court to handwritten notes regarding the
Form G-325A, those notes appear on page 39 (PAGEID#:213) of a document
entitled "N-400 Continuation Processing Worksheet," which is contained in
*Exhibit E*. Those notes appear as follows: "Systems viewed – 9101, 9101
(F11), 9106 – 02-20-03DMM," "G325 CIS: No Record yev [Officer Jarrett's
initials] 2/27/03" and "G325 C4: No Record yev [Officer Jarrett's initials]
2/27/03." *Id.* Officer Jarrett testified that she does not know who wrote
the note regarding "Systems viewed," but admitted that she made the entries
regarding G325 and "No Record." *Jarrett Depo.*, pp. 85-86. She went on to
explain that her G325 notations refer to the same form and that "CIS" and
"C4" refer to different systems through which she ran the form. *Id.* at 87,
91-94.

Form G-325 with certain applications for immigration benefits[.]"
*Government's Response*, p. 15 (citing *Exhibit 4 (U.S. Citizenship and
Immigration Services Instructions for Form I-485 (2013)*, PAGEID#:940,
¶ 8, attached thereto)).  However, "[a] naturalization applicant is
not required to submit a Form G-325A with the Form N-400."  *Id.*
(citing generally *Exhibit 5 (U.S. Citizenship and Immigration
Services, Instructions for Form N-400 (2013)*, attached thereto).  The
Government admits that the notations, *i.e.*, "G-325 CIS:  No Record"
and "G325 C4:  No Record," appear in the Form N-400 Continuation
Processing Worksheet in the A file, but argues that these notations do
not establish that the Form G-325A was contained in that A file.
*Government's Response*, pp. 15-16.  Instead, the Government explains
that it is possible that the USCIS verified defendant's biographic
information using his Form N-400 or immigrant visa application and
that the references to "G-325" are simply "a colloquial reference to
biographic information."  *Id.* at 16 (citing *Myers Affidavit*, ¶ 19; *Lee
Deposition*, p. 93 (explaining that an officer conducting a records
check is more likely to refer to the Form N-400 rather than to the
Form G-325A)).  The Government also contends that the reference to "No
Record" could mean that there was no Form G-325A in defendant's A
file, particularly because Officers Jarrett and Lee were not certain
what the notations on the Form N-400 Continuation Processing Worksheet
mean.  *Id.* (citing *Lee Deposition*, pp. 21, 54 (testifying that the
notations may "ha[ve] to do with a database check but I can't remember
exactly"; *Jarrett Deposition*, pp. 86-87 (agreeing that the notations
appeared to be made by her and agreeing that she "checked the G-325

CIS system on February 27 of 2003 and found no record"). According to the Government, defendant cannot establish that he has been prejudiced by the absence of this document because the form does not ask about travel or children and asks only for current spouse and former spouses. *Id*. (citing *Exhibit I*). Therefore, the Government argues, the Form G-325A offers little or no probative value in this case. *Id*.

Defendant contends that the absence of Form G-325A prejudices him because, without the document, the Government "and the Court can only speculate as to the extent of Defendant's disclosure of marital information, and, more importantly, Defendant is denied the opportunity to present evidence rebutting Plaintiff's speculation because Plaintiff lost the evidence." *Id*. at 13. Defendant asks that the Government be sanctioned for its reckless mishandling of this documents. *Id*.

As an initial matter, the Court agrees with defendant that the Form G-325A, which seeks information regarding, *inter alia*, an applicant's marital history, is relevant to the allegations in this case, *see*, *e.g.*, *Complaint*, ¶¶ 16-27, 32, 38, 43-45, and its loss or destruction may prejudice defendant. The Government suggests that defendant did not submit the Form G-325A during his interview. However, Officer Jarrett testified that the Form G-325A is a required form and that she would not have made a recommendation about defendant's naturalization without that form. The parties apparently agree that Form G-325A is not contained in Mr. Ahmed's A file:

> Q:   Okay.  And that as a matter of practice and policy,
> every time that you conduct an interview that G-325 form is
> placed into the A file; is that correct?

```
A:    Yes.

Q:    Okay.  And that as a matter of practice and policy,
every time that you conduct an interview that G-325 form is
placed into the A file; is that correct?

A:    Yes.

Q:    And that G-325 form for Mr. Ahmed is not in his A
file; is that correct?

A:    It is not in exhibit – It is not contained in the
Exhibit-C [A file].

Q:    Okay.  Thank you.  Do you have any explanation as to
why that form is not in Mr. Ahmed's A file?

A:    I have no explanation.
```

*Jarrett Deposition*, pp. 88-89. *See also id*. at 89-91.

Nevertheless, sanctions under Rule 37(c)(1)(C), which requires a

violation of Rule 26(a) or (e), are not warranted.  Defendant takes

the position that the Government's failure to produce the Form G-325A

violates Rule 26(e), which obligates a party to supplement or correct

a response to an interrogatory, request for production, or request for

admission.  *Reply*, p. 5.  *See also* Fed. R. Civ. P. 26(e)(1).[4] In

response to plaintiff's discovery requests, the Government stated,

*inter alia*, that it was unable to produce a Form G-325A completed by

defendant because that document is not in defendant's A file and the

Government lacks sufficient knowledge or information to admit or deny

that defendant completed the form or that the form was ever in the A

file.  *See Exhibit H*, pp. 4-6 (the Government's responses to

defendant's discovery request numbers 8-13).  The Government also

---

[4] Although defendant has not directed the Court to a particular discovery
request, it appears that defendant's request for production number 1,
contained within his first set of discovery requests, seeks a copy of
defendant's A file.  *See Exhibit F*, ECF 22-2, p. 3.

denied that the A-file does not contain all of the documentation that it once contained because "[t]here is no evidence that Defendant's Alien File is incomplete or that any documents from Defendant's Alien File have been lost or destroyed." *Id*. at 6 (response to request to admit number 14). Where the Government has explained that it does not possess defendant's completed Form G-325A, the Court cannot conclude that the Government's production of defendant's A file, which does not contain this form, violates Rule 26(e).

The Court reaches a similar conclusion in considering defendant's request to award sanctions pursuant to the Court's inherent authority. The record simply presents conflicting evidence in this regard. It would be inappropriate to award sanctions on this basis at this juncture. Accordingly, as it relates to the Form G-325A, *Defendant's Motion* is not well-taken.

## VI. DOCUMENTS NOT PRODUCED THAT WERE LATER DISCOVERED IN THE A FILE

Defendant also complains that the Government failed to produce two documents that were contained in the original A file, namely, a copy of a transmittal cover sheet and the original envelope from Win Translation Services. *Defendant's Motion*, pp. 8-9; *Reply*, p. 18. *See also Exhibit M*, ECF 22-7 (cover sheet) (filed under seal) and *Exhibit N*, ECF 22-8 (envelope) (filed under seal). Instead, defense counsel located these documents when counsel reviewed the original A file after the Government represented that it had produced the entire file. *Newhouse Affidavit*, ¶¶ 3-4. According to defendant, the Government's failure to produce these documents warrant sanctions under Rule 37(c)(1)(C) and, apparently, under the Court's inherent authority.

32

*See Defendant's Motion*, pp. 8-9; *Reply*, p. 18.

This Court disagrees.  First, the transmittal cover sheet is a one-page record reflecting that defendant's A File had been checked out to Agent Myers.  *Myers Declaration*, ¶ 18; *Exhibit M*.  Although the Government admits that it did not initially produce this document, *see Myers Declaration*, ¶ 18, this failure was harmless.  The Government later arranged for defense counsel to review the original A-file that was in Agent Myers' possession; at that point, defense counsel discovered and obtained a copy of the transmittal sheet.  *Newhouse Affidavit*, ¶ 3.  To the extent that defendant seems to suggest that the original failure to produce this document evidences a broader failure to properly handle the A file, that suggestion is not well-taken.  As set forth in greater detail above, the Government had extensive safeguards in place to track and manage the A file.  *See Myers Declaration*, ¶¶ 3-16.  Moreover, the evidence suggests that this record may not have actually been part of the A file because it is simply a transmittal sheet.  *See Id*. at ¶ 18 (explaining that Agent Myers did not copy the transmittal form that was on the cover of Defendant's alien file because he assumed that the form was not a part of defendant's A file).  There is no evidence that the initial failure to produce this form has adversely impacted the litigation. Under these circumstances, the Court concludes that sanctions under Rule 37(c)(1)(C) and its inherent authority are unwarranted.

Second, although the Government admits that it neglected to produce a copy of an empty envelope from Win Translation Services, the Court is not persuaded that this failure is sanctionable.  As noted

*supra*, Ms. Truong of Win Translation Services prepared defendant's Form N-400. *Truong Deposition*, pp. 11-12. Defendant contends that the failure to produce the envelope from Win Translation Services has prejudiced the defense because "[a]nother important issue in this case is whether, and to what extent defendant actually completed and understood the N-400 form[,]" particularly where English is defendant's second language. *Defendant's Motion*, pp. 8-9. Nevertheless, Agent Myers explained that he simply overlooked this document when he copied defendant's A file. *Myers Declaration*, ¶ 18. In addition, the record reflects that defendant obtained a copy of the document when the Government arranged for defense counsel to review the original A file. *Newhouse Affidavit*, ¶ 3. Moreover, defendant's Form N-400, which the Government represents was produced at the outset of discovery, reflects that Win Translation Services prepared the form on defendant's behalf. *Government's Response*, p. 18; *Exhibit E*, PAGEID#:203. Therefore, there was other evidence that plaintiff received assistance when completing his Form N-400. Finally, both parties have had the opportunity to depose Ms. Truong of Win Translation Services. *See generally Truong Deposition*. In short, the Court is not persuaded that the Government's failure to produce the empty envelope from Win Translation Services worked to the prejudice of defendant or otherwise justifies the dismissal of this action.

## VII. DOCUMENTS PRODUCED THAT WERE REPRESENTED AS PART OF THE A FILE THAT WERE NOT IN FACT PART OF THE ORIGINAL A FILE

Finally, defendant seeks sanctions because the Government produced documents that were represented as part of the A file, but

34

which were not, in fact, part of the original A file.  *Defendant's Motion*, p. 9; *Reply*, p. 16.  More specifically, four pages of the A file produced by the Government are printouts reflecting Agent Myers' review of government databases regarding travel by defendant during the statutory period.  *Exhibit E*, PAGEID#:177 – PAGEID#:180 (four pages of printouts); *Myers Deposition*, pp. 83-85, 87-90.  However, Agent Myers explains that he gave Government counsel these printouts along with a copy of defendant's A file.  *Myers Declaration*, ¶ 17.  "Government counsel mistakenly believed those printouts were part of Defendant's alien file and included them in the alien file he produced to opposing counsel.  Those printouts were a product of my investigation, and not a part of Defendant's alien file."  *Id*.  Under these circumstances, the Court is not persuaded that the inclusion of these four printouts establishes that the Government mishandled the A file nor does the inclusion of these documents establish that the government "acted recklessly, willfully, and in bad faith[,]" *see Reply*, p. 16.

Defendant also apparently argues that the inclusion of these records is "critically important" because "they purport to reflect that Defendant did not disclose his foreign travel during the statutory period." *Defendant's Motion*, p. 9.  To the extent that defendant fears that production of these documents as part of the A file prejudices him, this Court disagrees.  Agent Myers has already testified under oath that the records were erroneously included as part of the A file. *See Myers Declaration*, ¶ 17.  Moreover, defendant has had the opportunity to depose Agent Myers and, in fact, questioned

35

him regarding these documents.  *See Myers Deposition*, pp. 83-85, 87-90.  Under these circumstances, the Court is not persuaded that the mistaken inclusion of four pages of printouts from databases adversely impacted this litigation.  For all these reasons, defendant's request for sanctions on this basis is not well-taken.

**WHEREUPON**, it is **RECOMMENDED** that *Defendant's Motion to Compel Production of Documents and for Sanctions*, Doc. No. 20, be **DENIED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

November 26, 2014                  *s/Norah McCann King*
                                   Norah MᶜCann King
                            United States Magistrate Judge